**WATTS v. WATTS.**

No. 36029.

Supreme Court of Oklahoma.

May 11, 1954.

Rehearing Denied July 13, 1954.

H. B. King, Oklahoma City, for plaintiff in error.

Phil E. Daugherty, Oklahoma City, for defendant in error.

BLACKBIRD, Justice.

Defendant in error, Ann R. Watts, obtained, as plaintiff, an uncontested divorce from plaintiff in error, N. V. Watts, as defendant, in Cause No. 73552-D of the District Court of Oklahoma County, Oklahoma, on June 12, 1952, after obtaining both personal service on him and a waiver and agreement that the cause might be tried at any time without further notice to him. Watts filed no pleading and made no further appearance in the action. The only things involved were dissolution of the marriage and custody of the couple's three-year-old daughter, Sara Watts. In her pe-

tition, Mrs. Watts prayed for "permanent care and custody of the child * · * * with right of visitation to * · * * defendant." The decree granted her such custody with the right granted defendant to visit the child "in the custody of plaintiff, at reasonable times." Subsequently Mr. Watts became dissatisfied· with the manner in which Mrs. Watts allowed him to exercise his right of ·visitation,· and, after several unpleasant experiences in this respect, he instituted the present proceedings by filing in said Cause No. 73552–D, supra, a petition to vacate the divorce decree, alleging fraud and deception on the part of Mrs. Watts preventing him from filing his answer and defending the action. His petition to vacate contained further allegations purporting to describe the manner in which Mrs. Watts defrauded and deceived him. It would serve no· useful purpose to delineate or describe them in detail here. Suffice it to say that the·only ones in any way,·material or relevant to the· charge of fraud and deception were in substance that, after his waiver was executed and delivered, and the divorce decree was entered without his knowledge of its contents,· he discovered that it "materially and drastically exceeded the prayer of the petition with reference to the custody of the child and the privilege of visitation", that "he discovered that under said decree he could never again visit his child· except in the immediate presence of plaintiff or her parents, and that the privilege of visitation was left to the whim and· caprice" of Mrs. Watts. Most of the rest of the petition to vacate consists of allegations Watts made no effort to prove and describing occasions when Mrs. Watts, and/or one or both of her parents prevented him from seeing the child, and/or made it difficult, awkward or embarrassing for him to do so. At the trial, subsequent to joinder of the issues by pleadings, which included specific denials by Mrs. Watts that the divorce decree she had obtained went beyond the relief sought in her petition and that any fraud, deception or bad faith on her part was used to prevent Mr. Watts from defending the action, the trial court entered judgment for Mrs. Watts denying her former husband's petition to vacate the di-

vorce decree. As the parties appeared at the vacation proceedings in the relative positions of "plaintiff" and "defendant" and appear here in the same order, they will hereinafter be referred to by those terms.

In the face of the petition defendant filed for the divorce she had obtained as aforesaid, a copy of which appears in the record, showing that in the prayer thereof she asked that she be granted permanent care and custody of ·the child, Sara, "with right of visitation" to him, plaintiff, at the hearing on his petition to vacate, apparently abandoned his claim or allegation that the divorce decree went further or exceeded the relief defendant sought (as the plaintiff in said action) and he does not attempt to renew such·claim here. In his brief, however, he asserts that the decree "was substantially different from what he contemplated" at the time he signed the waiver of summons, and says he "had no reason to suspect that" defendant "would be given permanent, exclusive custody of the child, and that she would deprive him of the right to visit her." He quotes extensively from the case of Donley v. Donley, 184 Okl. 567, 89 P.2d 312, wherein a husband procured a waiver of summons from his wife upon the representation that it was going to be filed in a divorce action instituted by him against her, but later filed same in proceedings he instituted to obtain an annullment of their marriage. Plaintiff claims that case is similar to the present one on the hypothesis that in both, the judgment obtained by the party procuring the waiver from his ·adversary, was substantially different from that contemplated by the latter at the time the waiver was signed. It does not appear, and we have no way of knowing, what was in the plaintiff's mind or his own particular or peculiar "contemplation" at the time he filed the waiver. We do know, however, that whatever may have been in his thoughts or contemplation, there is no evidence in the record that it was the result of any· fraud or deception worked upon him by defendant· or her attorney. It is true·that in one place in his testimony, plaintiff, after testifying that his attorney furnished him with a copy of the journal·entry of the decree, further testified: "I didn't notice at the time the dif-

ference between the decree and the waiver"; and in another part of his testimony plaintiff answered in the negative a question by his own counsel as to whether he authorized the attorney who represented him at the divorce action to agree to a decree that would give his wife permanent and exclusive custody of the child; and in another place, he indicated that it was not until after he had made his initial contact with his present attorney and gone with him to the court house to examine the files in the divorce action, that he knew or realized that defendant had obtained permanent, exclusive custody of the child, with only the right of visitation granted him. We do not quite understand plaintiff's reference to "the difference between the decree and the waiver", and this was never explained. The waiver was not introduced in evidence, but we assume that it was in the regular form which contains no reference to any particular issue of such a case, and, of course, makes no mention of child custody. It is significant that plaintiff never testified that he was not furnished with a copy of, or had no access personally or through his attorney to, defendant's petition for divorce in which she specifically prayed for "permanent care and custody of the child * * *." (Plaintiff is a college graduate and made no claim that he could not read or understand such language.) It is also significant that never in his testimony did plaintiff ever make the charge that anyone misrepresented or misled him into believing that permanent and exclusive custody of the child was not, or would not be, an issue in the case, or that his wife did not desire, or would not seek, such custody. On the other hand, defendant testified positively that when the parties discussed plans for the divorce, she told him she was willing to deed him their home and let him have the family automobile, but that she would "have to have" custody of Sara. She testified positively that she never at any time agreed to let plaintiff have custody of said child or authorize her attorney or anyone else to make any such representation to plaintiff. Her attorney testified that he also told plaintiff that she wanted permanent and exclusive custody of the child

when plaintiff first contacted him after being served with summons in the case, and that he also told plaintiff's attorney in said action. Plaintiff cites the rule that though fraud must be proved at law, in equity it is sufficient to show facts annd circumstances from which it may be presumed, Abernathy v. Huston, 166 Okl. 184, 26 P.2d 939, citing Bottoms v. Neukirchner, 29 Okl. 104, 116 P. 434, but we are unable to find any valid basis for the application of such a rule to the present case.

Much of plaintiff's testimony deals with— in fact the real cause of his complaint seems to be—that he was never allowed to see or visit his child other than in the presence of defendant or one or both of her parents. If he had good cause for seeking modification of the decree's provisions as to said child's custody or her visitation by him, he should have concentrated on trying to obtain that, rather than attempting to vacate the decree.

Judgment is affirmed.

HALLEY, C. J., JOHNSON, V. C. J., and WELCH, DAVISON, ARNOLD, O'NEAL and WILLIAMS, JJ., concur.