**David Gordon WHITE, as Executor of the Estate of Winifred White, Appellant,**

v.

**Jim D. BERGER, Tana Parks Berger, and the Occupants of 1147 S. Urbana, Tulsa, Oklahoma, Appellees.**

No. 82439.

Court of Appeals of Oklahoma, Division No. 3.

March 14, 1995.

Rehearing Denied May 16, 1995.

Certiorari Denied July 20, 1995.

Frank R. Patton, Jr., Tracy W. Robinett, Patton, Brown, Tulsa, for appellant.

Rodney A. Edwards, Tulsa, for appellees.

## OPINION

ADAMS, Judge:

David Gordon White appeals a trial court summary adjudication order in favor of the appellees in his quiet title action. Because the evidentiary materials presented to the trial court reveal disputed issues of material fact, we reverse the trial court's judgment.

## STANDARD OF REVIEW

 In addressing White's claim that summary adjudication was inappropriate, we must examine the pleadings, depositions, affidavits and other evidentiary materials submitted by the parties and affirm only if there is no genuine issue as to any material fact and the appellees are entitled to judgment as a matter of law. *Perry v. Green,* 468 P.2d 483 (Okla.1970). All inferences and conclusions to be drawn from the evidentiary materials must be viewed in a light most favorable to White. *Ross v. City of Shawnee,* 683 P.2d 535 (Okla.1984). We are limited to the issues actually presented below, as reflected by the record which was before the trial court rather than one that could have been assembled. *Frey v. Independence Fire and Casualty Company,* 698 P.2d 17 (Okla.1985).

## FACTS

White's mother, Winifred White, died testate in 1989, owning an interest in certain real property in Tulsa County, Oklahoma (the property). Her will named White as executor and sole residual devisee. The parties agree that White was entitled to the property under the will. White initially took no steps to probate the will and apparently did not pay the ad valorem taxes due on the property. In 1992, Appellees Jim D. Berger and Tana White Berger obtained a tax certificate to the property.

According to White's evidence, Jim Berger contacted White about obtaining a quitclaim deed conveying White's interest to the Bergers. According to White, Jim Berger told him that the time to redeem the property from tax sale had expired and that other liens on the property made it worthless. Although Jim Berger denies making such statements, it is undisputed that the property was not subject to any liens other than the tax lien and that White's time to redeem had not expired. Based on these statements, White says, he sold his interest to the Bergers for $500 and executed a quitclaim deed to that effect.

Eight days after this transaction, White discovered he could still redeem the property from tax sale and that no other liens existed. He paid the taxes, and only twenty days after executing the deed, notified the Bergers that he was rescinding the sale and offered to refund the $500 consideration for the quitclaim deed. When the Bergers refused, White instituted appropriate probate proceedings, was appointed executor, and commenced this action.

After the pleadings narrowed the issue to whether the quitclaim deed could be set aside, the Bergers filed a motion for summary judgment. Initially, the Bergers' motion did not address the issue of the alleged misrepresentations. However, after White responded with his affidavit that he executed the quitclaim deed in reliance upon those alleged misrepresentations, the Bergers argued they were entitled to judgment as a matter of law under *Sokolosky v. Tulsa Orthopaedic Associates, Inc. Pension Trust for Employees,* 566 P.2d 429 (Okla.1977) and *Onstott v. Osborne,* 417 P.2d 291 (Okla.1966).

Solely for the purposes of the motion, the trial court assumed White's allegations that Jim Berger made false statements which induced him to sell were true. Citing *Sokolosky* and *Onstott,* the trial court concluded White could not claim fraudulent inducement because White could have discovered whether Jim Berger's alleged statements were true or false by inspecting public records. Based

on this principle of law, the trial court granted judgment to the Bergers.

### ANALYSIS

█ White argues that *Sokolosky* and *Onstott* do not apply. Further, White argues, he was entitled to rely on Jim Berger's alleged representations and did not lose that right merely because he had a means of discovering the fraudulent nature of the alleged representations by checking the public record. The Oklahoma Supreme Court so held in *Harrell v. Nash,* 192 Okl. 95, 133 P.2d 748 (1942), *Thompson v. Davis,* 124 Okl. 79, 254 P. 501 (1925), and *Wheeler v. Purseley,* 88 Okl. 27, 210 P. 1019 (1922).

In *Onstott,* relied upon in *Sokolosky,* both parties knew there was oil and gas development on a tract of land. Onstott purchased the surface rights only "subject to all easements of record" with a view to developing the tract. He sued to rescind, contending the tract was unfit for development because of the presence of pipelines and that the seller had represented that the land was suitable for development and that the pipelines were "old and abandoned." The Court concluded that any general discussions prior to the execution of purchase contract had been superseded by the contract and that knowledge concerning any detriment the pipelines might have had on development was equally available to both parties. Accordingly, the Court concluded Onstott had not shown fraud. In support of its analysis, the Court cited *Nowka v. West,* 77 Okl. 24, 186 P. 220 (1919).

In *Nowka,* the purchaser inspected the land but did not discover a defect. When he sued the seller for fraud, the Court ruled the seller had no duty to disclose a defect in the property which the purchaser could have discovered by an adequate inspection. *Onstott* also relied on *Gutelius v. Sisemore,* 365 P.2d 732 (Okla.1961), in which the Court again held that a purchaser who had inspected the property could not recover for fraud where the seller failed to disclose a defect which the purchaser should have discovered by an adequate inspection.

In *Sokolosky,* the alleged misrepresentations—that an amusement park was planned nearby, that the City would purchase part of the land for the construction of a water tower and that the seller had influence with the City which would cause the tower to be built—were about future actions planned by third parties which would affect the land's value. The Court concluded those representations were either sales talk or could have been verified with reasonable diligence. Applying *Onstott,* the Court held the plaintiff would not be heard to claim he had been deceived because the means to verify the alleged statements were equally available to the parties.

In contrast, the cases applying the *Harrell* line of reasoning involve positive misrepresentations about the ownership, location, encumbrances upon, or quantity [1] or character [2] of property being conveyed, precisely the kind of misrepresentations which White alleges were made by Jim Berger. The rule recognized in the *Harrell* line is longstanding in Oklahoma. As the Court noted in *Prescott v. Brown,* 30 Okl. 428, 120 P. 991 (1911), a person speaking falsely ought not be allowed to escape the consequences of the fraud by arguing that the listener should not have believed his representation.

In *Prescott,* the Court held that the plaintiff had a right to rely on positive representations of existent material facts even though the means of knowledge were open to him. The real question was whether the party was in fact deceived by false representations be-

---

**1.** Thus, in *Miller v. Wissert,* 38 Okl. 808, 134 P. 62 (1913), a vendor was held not to be entitled to avoid the consequences of false representations about the quantity of land conveyed merely because their falsity could have been discovered with a survey or by reference to plats and records.

**2.** In *Rucker v. Tietz,* 376 P.2d 341 (1962), it was held to be no defense to an action for fraud that

heifers represented to be springers could have been tested to determine if they truly were pregnant. Likewise, in *Hobbs v. Smith,* 27 Okl. 830, 115 P. 347 (1911), it was no defense that the plaintiffs could have examined hogs defendants knew to be infected where the plaintiff had relied on an affirmative representation by defendants that the hogs were healthy.

cause "[i]t is as much an actionable fraud to deceive a credulous person with an improbable story as it is to deceive a cautious and sagacious person with a plausible one." *Prescott,* 120 P. at 991. *Accord, Halsell v. First National Bank of Muskogee,* 48 Okl. 535, 150 P. 489 (1915).

In *Wheeler,* the Court held the plaintiff was justified in relying on representations about the location of land. This right was not destroyed because means of knowledge were open to him. The Court noted the *Nowka* rule, which was followed later in *Sokolosky* and *Onstott,* but found the rule inapplicable because rather than making an incomplete investigation the plaintiff had been affirmatively misled.

■ *Thompson* is the closest case on the facts to White's claims. In *Thompson,* the defendant told the plaintiff that land she had inherited was not worth much, that the title was bad, that it would be expensive to clear up the title, that taxes were due and unpaid, that lawyer fees and court costs .related to her father's estate were unpaid, and that her sister was planning to sue her and attach the land. Believing these representations, the plaintiff signed a deed conveying the land to the defendant and accepted consideration for a fraction of its true value. The Court found that the defendant knew the representations were untrue, and allowed plaintiff to recover damages.

According to the Court, no one should "be permitted to complain or take advantage of the fact that another has too confidently relied upon the truthfulness of the statements he has himself made." *Thompson,* 254 P. at 503. The Court rejected the notion that recovery should be prevented because the plaintiff could have discovered the defendant's statements were untrue by checking the public records.

In *Harrell,* heirs of Joseph Nash sued to reform a contract and a mineral deed. The Nash heirs had signed mineral deeds reserving a one-sixteenth interest because the Harrells' attorney represented that existing leases gave them a one-eighth royalty, the usual royalty reserved in oil and gas mining leases in Oklahoma. The Nash heirs intended to reserve one-half of their interest. In fact,

the leases reserved a one-fourth royalty interest. The Court noted that the Harrells' attorney had positively stated that the leases carried a one-eighth royalty and rejected the claim the heirs' recovery should be defeated because they could have ascertained the untruthfulness of the representation by checking public records.

Similarly, in *G.A. Nichols, Inc. v. Karnes,* 188 Okl. 28, 106 P.2d 125 (1940), the Court held the plaintiff had a right to rely upon positive representations about the existence of a material fact about the property conveyed, although an investigation could have revealed the non-existence of the fact. The Court expressly held the rule in *Nowka* inapplicable.

We do not conclude, as suggested by the Bergers, that the Oklahoma Supreme Court intended in *Sokolosky* to abandon the long-recognized principles enunciated in *Prescott* and *Harrell.* None of the cases relied upon by the Bergers involved statements by a purchaser who approached an owner and allegedly misrepresented the status of the owner's title. As noted, *Thompson* involved almost the precise allegations involved here, and the Court concluded the *Nowka* rule relied upon here by the Bergers did not apply.

If Jim Berger made the statements which White says were made, White is not precluded from recovery merely because he could have discovered whether those statements were true by checking the public records. Once the proper rule is applied, it is clear that unresolved factual controversies precluded summary adjudication. *Erwin v. Frazier,* 786 P.2d 61 (Okla.1989). The trial court's judgment is reversed, and the case is remanded for further proceedings according to law.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

GARRETT, C.J., and HUNTER, J., concur.